# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

| In Re | |
|---|---|
| **DAVID W. HENDERSON and CANDICE Y. HENDERSON,** | **Bankruptcy Case No. 10-03114-JDP** |
| **Debtors.** | |

_____

## MEMORANDUM OF DECISION
_____

**Appearances:**

Joseph F. Ammirati, Ammirati Law, Garden City, Idaho, Attorney for Debtors.

Kathleen A. McCallister, Chapter 13 Trustee.

## Introduction

David and Candice Henderson ("Debtors") are above-median-income chapter 13[1] debtors who, because their Form 22C[2] shows they have

_____

[1] Unless otherwise indicated, all chapter and section references are to the

(continued...)

MEMORANDUM OF DECISION - 1

negative "projected disposable income," propose a three-year debt

repayment plan.  Dkt. Nos. 9, 30, 40.  While Debtors' plan calls for monthly

payments of $1,140, all of that amount is required to service secured debt

and administrative expenses; the plan will pay nothing to Debtors'

unsecured creditors.  *See* Dkt. No. 40.

Chapter 13 trustee, Kathleen McCallister ("Trustee"), objected to

confirmation of Debtors' plan because she believes a five-year plan is

required by the Bankruptcy Code.  Dkt. Nos. 26, 40, 44, 45.  A confirmation

hearing was held on March 1, 2011, at the conclusion of which the Court

allowed the parties time for additional briefing.  Having considered the

record, the parties' submissions, and applicable law, this Memorandum

addresses whether, in a post-*Lanning* and -*Ransom* world, above-median-

income chapter 13 debtors with no projected disposable income in the

---

[1](...continued)
Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all rule references are to the
Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

[2] "Form 22C " refers to the "Chapter 13 Statement of Current Monthly
Income and Calculation of Commitment Period and Disposable Income."

MEMORANDUM OF DECISION - 2

Ninth Circuit are required to commit to five-year plans.

## Facts[3]

Debtors' Schedules I and J indicate that they have monthly net income of $1,140. Dkt. No. 1. However, the calculations on Debtors' Form 22C yield a negative disposable income of -$184.48 per month. Dkt. No. 30. The difference between Debtors' Schedule I and J monthly net income and their Form 22C disposable income results because their Form 22C "expenses" are greater than their actual expenses.[4] *Compare* Dkt. No. 30, *with* Dkt. No. 1.

Despite a negative Form 22C disposable income, Debtors propose to confirm a chapter 13 plan under which they will pay $1,140 per month to Trustee for three years, all of which will pay secured debt and

---

[3] Only material facts are recited here.

[4] Under amendments made by Congress to the Bankruptcy Code in 2005, debtors with above-median income for their state must use certain standardized "expenses," to calculate Form 22C disposable income. *See* §§ 707(b)(2); 1325(b)(2), (b)(3). Schedule J, on the other hand, is completed using debtors' actual expenses.

MEMORANDUM OF DECISION - 3

administrative expenses.  Dkt. No. 9.  Trustee objects to confirmation of

Debtors' plan because it does not propose payments over what she

considers to be the five-year "applicable commitment period" of

§ 1325(b)(4)(ii).  *See* Dkt. Nos. 26, 40, 44, 45.  Debtors respond that, under

the case law interpreting the Code, chapter 13 debtors with negative

projected disposable income are not required to confirm plans of a specified

duration, and so Trustee's objection lacks merit.  *See* Dkt. No. 46.  The Court

must decide who is correct.

## Discussion

Chapter 13's basic tenets are straight-forward.  In sum, chapter 13

provides voluntary bankruptcy protection to regular-income-earning

individuals owing less than prescribed maximum debt amounts.  *See*

§ 109(e) (prescribing that only debtors owing less than $1,081,400 in

secured, and $360,475 in unsecured, debts are eligible for chapter 13 relief).

When they seek relief, chapter 13 debtors must propose a debt repayment

plan under which they agree to make monthly payments to a trustee from

MEMORANDUM OF DECISION - 4

their future income, which will be distributed to pay their creditors' claims in part or full.  *See* § 1322.

Section 1322 of the Code identifies both mandatory and optional plan provisions.  Section 1325 identifies the criteria used to determine whether a plan should be approved, or "confirmed," by the bankruptcy court.  If debtors complete all payments required by a confirmed chapter 13 plan, they are eligible for a discharge.  § 1328(a).

A plan that includes the required components of § 1322, and satisfies the general confirmation requirements of § 1325(a), is typically approved.  However, when the trustee or an unsecured creditor objects to plan confirmation, additional confirmation criteria, found in § 1325(b), apply.  Here, Trustee objected to confirmation of Debtors' proposed plan.  As a result, the Court may not confirm that plan unless the additional § 1325(b) criteria are met.  As relevant here, § 1325(b) provides:

> (1)  If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

MEMORANDUM OF DECISION - 5

> ****
> (B) the plan provides that all of the debtor's
> projected disposable income to be received
> in the applicable commitment period
> beginning on the date that the first payment
> is due under the plan will be applied to
> make payments to unsecured creditors
> under the plan.

§ 1325(b)(1).  As can be seen, Debtors' plan may be confirmed only if it

provides that all "projected disposable income" to be received in the

"applicable commitment period" will be paid to unsecured creditors.

§ 1325(b)(1)(B).  The Code defines "applicable commitment period" as:

> For purposes of this subsection, the 'applicable
> commitment period'—
>
> (A) subject to subparagraph (B), shall be—
> (i) 3 years; or
> (ii) not less than 5 years, if the current
> monthly income of the debtor and the
> debtor's spouse combined, when multiplied
> by 12, is not less than—
> ****
> (II) in the case of a debtor in a
> household of 2, 3, or 4 individuals, the
> highest median family income of the
> applicable State for a family of the
> same number or fewer individuals;

MEMORANDUM OF DECISION - 6

**\*\*\*\***

> (B) may be less than 3 or 5 years, whichever is
> applicable under subparagraph (A), but only if the
> plan provides for payment in full of all allowed
> unsecured claims over a shorter period.

§ 1325(b)(4).  Due to their above-median income, the applicable

commitment period for Debtors' plan is five years.  *Id.*  Because of this,

Trustee objects to confirmation of Debtors' proposed three-year plan.

Trustee's concerns seem easy enough to understand.  However, the

Court's analysis of whether Debtors' plan should be confirmed is

complicated by the holdings in the case law construing the Code provisions

discussed above.

Of particular import here is the Ninth Circuit Court of Appeals'

decision in M*aney v. Kagenveama* (*In re Kagenveama*), 541 F.3d 868 (9th Cir.

2008).  The facts of *Kagenveama* nearly mirror those of this case.  *See* 541 F.3d

at 871.  The *Kagenveama* chapter 13 debtor was above-median income.  *Id.*

Her Schedules I and J indicated a monthly net income of $1,523.89, while

her Form 22C disposable income was negative -$4.04 per month.  *Id.*  Like

MEMORANDUM OF DECISION - 7

here, the difference between the *Kagenveama* debtor's Schedule I and J

monthly net income and her Form 22C disposable income resulted from

Form 22C standardized expenses that were greater than her actual

expenses.  *See id.*  Despite a negative disposable income, the *Kagenveama*

debtor proposed a plan by which she would pay $1,000 per month to the

chapter 13 trustee for three years.[5]  *Id.*  The *Kagenveama* chapter 13 trustee

objected to plan confirmation because the plan did not extend for the five-

year "applicable commitment period" under § 1325(b)(4)(ii).  *Id.*

The Ninth Circuit, in a sharply divided opinion, affirmed the

bankruptcy court's decision to overrule the trustee's objection to

confirmation, and to confirm the debtor's proposed plan.[6]  *Id.* at 871.  Of

course, under stare decisis, this Court is bound by interpretations given the

_____

[5]  Unlike here, though, the *Kagenveama* debtor's plan "yielded an estimated dividend of $9,444.38 to her unsecured creditors."  541 F.3d at 871.

[6]  When the *Kagenveama* chapter 13 trustee appealed the bankruptcy court's decision, that bankruptcy court entered an order certifying the case for direct appeal to the Ninth Circuit.  541 F.3d at 871.

MEMORANDUM OF DECISION - 8

Bankruptcy Code by the Ninth Circuit, and this Court must decide its cases

consistent with those holdings.  *See In re Deboer*, 99 I.B.C.R. 101, 103 (Bankr.

D. Idaho 1999).  However, in this case, Trustee contends that more recent

Supreme Court decisions have invalidated the otherwise binding effect of

the Ninth Circuit's *Kagenveama* opinion.  Trustee's Memorandum at 4, Dkt.

No. 45.  Debtors disagree that the Ninth Circuit's decision is no longer good

law, and rely upon *Kagenveama* in arguing their plan should be confirmed.

*See* Debtors' Brief, Dkt. No. 46.

**I.     *Kagenveama*.**

To evaluate Trustee's contention that the *Kagenveama* ruling is

vulnerable, it is necessary to first understand the two principal holdings of

that decision.

First, the Ninth Circuit determined that, as used in the Code,

"projected disposable income" is merely "'disposable income,' . . . projected

over the 'applicable commitment period' . . . ."  *Id.* at 871–72.  While the

Ninth Circuit acknowledged competing methods used by various courts in

MEMORANDUM OF DECISION - 9

interpreting the Code, it adopted the so-called "mechanical approach" to

calculating projected disposable income.  *Id.* at 871–75.  In doing so, it

reasoned that multiplication of a debtor's disposable income by the

applicable commitment period, and nothing more, yields "projected

disposable income."  *Id.*

Second, the Ninth Circuit reviewed whether the term "applicable

commitment period," as used in the Code, requires debtors to pay

unsecured creditors over a specific period of time; and, if it is indeed a

temporal concept, whether that requirement applies to debtors with no

"projected disposable income."  *Id.* at 875–77.  The *Kagenveama* court

concluded that, for objected-to plans, "applicable commitment period" is a

temporal requirement that "denotes the time by which a debtor is obligated

to pay unsecured creditors."  *Id.* at 875.  But, important for our purposes,

the Ninth Circuit went on to note:

> There is no language in the Bankruptcy Code that
> requires all plans to be held open for the
> "applicable commitment period."  Section

MEMORANDUM OF DECISION - 10

> 1325(b)(4) does not contain a freestanding plan
> length requirement; rather, its exclusive purpose is
> to define "applicable commitment period" for
> purposes of the § 1325(b)(1)(B) calculation.
> Subsection (b)(4) states "For purposes of this
> subsection, the 'applicable commitment period' . . .
> shall be . . . not less than 5 years" for above-
> median income debtors.  Subsection (b)(1)(B)
> states that "the debtor's 'projected disposable
> income' to be received in the 'applicable
> commitment period' . . . will be applied to make
> payments under the plan."  When read together,
> only "projected disposable income" has to be paid
> out over the "applicable commitment period."
> When there is no "projected disposable income,"
> there is no "applicable commitment period."

*Id.* at 876.

Fairly summarized, in the Ninth Circuit's view, if a trustee or unsecured creditor objects to plan confirmation for an above-median-income debtor with positive projected disposable income, the debtor must pay all of his projected disposable income to unsecured creditors for a period of no less than five years, *i.e.*, the applicable commitment period.  *Id.* at 876–77.  If, however, that same above-median-income debtor has no

MEMORANDUM OF DECISION - 11

projected disposable income, the Ninth Circuit holds that "applicable

commitment period" does not apply.  *Id.* at 876.  The upshot of these

conclusions is that, for above-median-income chapter 13 debtors with no

projected disposable income, their proposed plan payments need not

continue for any set period of time, and, in particular, not for five years as

Trustee suggests here.

**II.**    *Lanning.*

The first of two recent Supreme Court decisions addressing

*Kagenveama*-related issues is *Hamilton v. Lanning*, __ U.S. __, 130 S.Ct. 2464

(2010).  It is Trustee's view that *Kagenveama* "was controlling in the [N]inth

[C]ircuit until the Supreme Court effectively overruled the *Kagenveama*

court with [that decision]."  Trustee's Memorandum at 4, Dkt. No. 45.

However, Trustee's analysis of how *Lanning* affected *Kagenveama* is

incomplete, and her argument is imprecise.  In the Court's opinion, while

*Lanning* effectively overruled one of *Kagenveama*'s holdings, it is not at all

MEMORANDUM OF DECISION - 12

clear that it overruled both.

The *Lanning* Court "granted certiorari to decide how a bankruptcy court should calculate a debtor's 'projected disposable income.'" 130 S.Ct. at 2469. One option was to adopt the "mechanical approach." *See id.* Under that approach, debtors begin by calculating Form 22C disposable income, which, for above-median-income debtors, is "current monthly income" reduced by standardized expenses. §§ 1325(b)(2), (b)(3). "Disposable income" is then multiplied by the applicable commitment period, resulting in "the debtor's projected disposable income to be received in the applicable commitment period." *See Lanning*, 130 S.Ct. at 2471 (describing the mechanical approach); § 1325(b)(1)(B).

As noted, projected disposable income calculations begin with "current monthly income." Current monthly income is a defined term: "the average monthly income from all sources that the debtor receives . . . during the 6-month period" before she files her petition. § 101(10A).

MEMORANDUM OF DECISION - 13

Because "current monthly income" is an average, a one-time receipt of

extraordinary income during the six months prior to filing will skew the

average upward.  That is exactly what happened in *Lanning*, where the

debtor received a lump sum payment from her former employer in the six-

month period prior to filing her chapter 13 petition.  130 S.Ct. at 2469.  That

payment inflated her current monthly income, resulting in inflated

projected disposable income.  *Id.*  So significant was the skewing of the

*Lanning* debtor's financial situation that her actual income was insufficient

to make the payments her mechanical approach projected disposable

income calculations indicated she could afford.[7]  *See id.*  Nonetheless, the

*Lanning* chapter 13 trustee contended the debtor was required to commit all

of her projected disposable income, as calculated per the mechanical

---

[7] The mechanical approach indicated the *Lanning* debtor could pay her unsecured creditors $756 per month for 60 months.  130 S.Ct. at 2470.  Her actual, Schedule I and J net monthly income at the time of filing was $149.03.  *Id.*

MEMORANDUM OF DECISION - 14

approach, to her repayment plan.  *Id.*

The *Lanning* Court rejected the mechanical approach in favor of what is commonly referred to as the "forward-looking" approach.  *Id.*  As analyzed by the Court, to determine a debtor's projected disposable income, the Code requires bankruptcy courts to begin with Form 22C disposable income projected over the applicable commitment period, as is done in the mechanical approach.[8]  However, in "unusual cases," where there is evidence of impending changes to a debtor's income or expenses that are "known or virtually certain" to occur,[9] the bankruptcy court may

---

[8]  The Supreme Court did not determine "that projected disposable income was not meant to be a multiplier," as asserted by Trustee in her brief.  *See* Trustee's Memorandum at 4, Dkt. No. 45.  It merely indicated that the mechanical approach is not the end of projected disposable income calculations in exceptional cases.  *See Lanning*, 130 S.Ct. at 2475 ("[A] court taking the forward-looking approach should begin by calculating disposable income, and in most cases, nothing more is required.").

[9]  More precisely, the forward-looking approach is triggered by a known or virtually certain change in debtors' petition date Schedule I and J monthly net
(continued...)

MEMORANDUM OF DECISION - 15

adjust the results of the mechanical approach in fixing the debtor's

projected disposable income.  *See id.* at 2475; *see also In re Thiel*, 2011 WL

799779 (Bankr. D. Idaho Mar. 1, 2011).

Because the Supreme Court adopted the forward-looking approach,

as opposed to the *Kagenveama*-favored mechanical approach, *Kagenveama*'s

instructions to bankruptcy courts for calculating debtors' projected

disposable income were effectively overruled.  But, contrary to Trustee's

suggestion, it is clear the *Lanning* decision did not directly address the other

issue resolved in *Kagenveama*:  whether § 1325(b)(1)(B) requires an above-

---

[9](...continued)
income (Schedule J, Line 20(c)).  At least for above-median-income debtors, the
Form 22C expenses used to calculate disposable income are derived primarily
from IRS National and Local Standards.  *See* §§ 707(b)(2), 1325(b)(3).  Therefore,
only rarely will debtors' actual expenses match their Form 22C expenses.
Because any newly-changed actual expenses will be as poorly represented by
Form 22C expense standards as were old expenses, a change in actual expenses,
in and of itself, will not necessarily trigger the forward-looking approach.
However, inasmuch as a change in actual expenses affects the funds potentially
available to creditors (a debtor's monthly net income), the forward-looking
approach may be appropriate.

MEMORANDUM OF DECISION - 16

median-income debtor with no projected disposable income to make

payments to debtors over the applicable commitment period.  *See generally*

*Lanning*, 130 S.Ct. 2464.

### III.    *Ransom.*

Like *Lanning*, the Supreme Court's *Ransom* decision did not

specifically address whether "applicable commitment period" is a temporal

concept.  *See generally Ransom v. FIA Card Servs., N.A.*, __ U.S. __, 131 S.Ct.

716 (2011).  Rather, *Ransom* focused on whether a chapter 13 debtor, in

calculating disposable income, may deduct Form 22C expense standards if

he does not have corresponding actual expenses.  *Id.* at 723–30.  Specifically,

the *Ransom* debtor sought to deduct standardized vehicle "ownership

costs," despite owning his vehicle free of any debt or lease obligations.  *Id.*

at 722–23.  The Court determined that, where a debtor will not incur an

expense during the life of his chapter 13 repayment plan, he may not take a

standardized deduction for that expense in calculating projected disposable

MEMORANDUM OF DECISION - 17

income.  *Id.* at 730.

Despite that it does not address whether applicable commitment period is a temporal concept, Trustee asserts *Ransom*'s reasoning warrants an invalidation of *Kagenveama*'s applicable commitment period holding. *See* Trustee's Memorandum at 6, Dkt. No. 45.  According to Trustee, this results from considering the issue at hand in light of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005's ("BAPCPA") text, context, and purpose, as was done by the *Ransom* Court.

An extended discussion of *Kagenveama*'s analysis of the Code's text and context in light of *Lanning* and *Ransom* would serve little purpose because all three decisions focused on different portions of the Code. Neither *Lanning* nor *Ransom* directly addressed the applicable commitment period concept at issue in *Kagenveama*.  More helpful, then, is a review of the Code's "purpose."  *See, e.g., Baud v. Carroll*, 634 F.3d 327, 351 (6th Cir. 2011) (recognizing "that the plain-language arguments supporting each

MEMORANDUM OF DECISION - 18

approach [to applicable commitment period] are nearly in equipoise, and

that the circuit-level decisions on the issue are entirely so," and looking to

the Code's purpose to make a distinction among approaches).

      A.    <u>BAPCPA's general purpose is different than the means test's
purpose</u>.

      BAPCPA's congressionally-stated general purpose was "to improve

bankruptcy law and practice by restoring personal responsibility and

integrity in the bankruptcy system and ensur[ing] that the system is fair for

both debtors and creditors."  H.R. REP. NO. 109-31, pt. 1, at 2 (2005),

*reprinted in* 2005 U.S.C.C.A.N. 88.  One of the methods of making such

improvements was the development of an eligibility-screening mechanism

known as the "means test."  *Id.*  Like other BAPCPA components, the

means test has its own congressionally-stated purpose:

> The heart of the bill's consumer bankruptcy
> reforms consists of the implementation of an
> income/expense screening mechanism ('needs-
> based bankruptcy relief' or 'means testing'), which

MEMORANDUM OF DECISION - 19

> is intended to ensure that debtors repay creditors
> the maximum they can afford.

H.R. REP. NO. 109-31, pt. 1, at 2.  Therefore, while BAPCPA's general

purpose is to increase fairness under the bankruptcy laws for both debtors

and creditors, the purpose of BAPCPA's means test component is solely

creditor-friendly:  to ensure creditors receive greater payments from able-

to-pay debtors.

    B.    *Lanning* and *Ransom* analyzed only means test issues.

    Both *Lanning* and *Ransom* addressed means test issues, and analyzed

the means test's purpose in doing so.  *Lanning* settled the definition of

"projected disposable income," which is based on the means test and

adjusted for known or virtually certain changes in a debtor's financial

circumstances.  §§ 707(b)(2), 1325(b)(2), (b)(3).  *See Lanning*, 130 S.Ct. at 2475;

*In re Thiel*, 2011 WL 799779 at *1 n.10.  In support of *Lanning*'s forward-

looking projected disposable income approach, the Supreme Court

MEMORANDUM OF DECISION - 20

indicated that, where debtors' income has increased, or is virtually certain to increase, through a change in financial circumstances, projected disposable income should be adjusted, consistent with the means test's purpose, so as to avoid the "senseless results" of "deny[ing] creditors payments that the debtor could easily make." *Lanning*, 130 S.Ct. at 1475–76.

The *Ransom* Court, on the other hand, addressed whether debtors may deduct means test standard expenses even if they do not incur a corresponding actual expense. *See* 131 S.Ct. at 721. In doing so, the *Ransom* decision restates Congress' means test purpose: "Congress designed the means test to measure debtors' disposable income and, in that way, 'to ensure that [they] repay creditors the maximum they can afford.'" 131 S.Ct. at 725 (quoting H.R. REP. NO. 109-31, pt. 1, at 2).

Unfortunately, the *Ransom* Court was less precise in its language later

MEMORANDUM OF DECISION - 21

in the decision.[10]  131 S.Ct. at 729.  There, in referring to a debtor-proposed

interpretation of the means test, and citing to its earlier discussion of the

means test's purpose, the Supreme Court states:  "[the debtor's]

interpretation, as we have explained, would frustrate BAPCPA's core

purpose of ensuring that debtors devote their full disposable income to

repaying creditors."  *Id.*

Devotion of disposable income to repaying creditors is a stated

congressional purpose behind the means test; it is not, however,

"BAPCPA's core purpose."[11]  *See* H.R. REP. NO. 109-31, pt. 1, at 2.  Imputing

---

[10]  It is especially unfortunate in this instance because the *Ransom* Court
had already determined that the text and context of the Code supported its
interpretation of the statutory language.  131 S.Ct. at 724–25.  Resort to the Code's
legislative history was, therefore, unnecessary.  *See United States v. Ron Pair
Enters., Inc.*, 489 U.S. 235, 242–43 (1989) ("The plain meaning of legislation should
be conclusive, except in the 'rare cases [in which] the literal application of a
statute will produce a result demonstrably at odds with the intentions of its
drafters.'").

[11]  While BAPCPA's legislative history indicates that the means test is the
"heart of the bill's consumer bankruptcy reforms," H.R. REP. NO. 109-31, pt. 1, at
(continued...)

MEMORANDUM OF DECISION - 22

the purpose of one BAPCPA innovation to BAPCPA as a whole may not

promote the statute's purpose, but, rather, may increase the likelihood that

purpose will be frustrated.[12]  While the means test was introduced to

provide additional protection to creditors, BAPCPA on the whole was

intended to produce a fairer system for creditors and debtors.  *Id.*  If all of

---

[11](...continued)
2, it is not necessarily accurate to state that the means test's purpose is
"BAPCPA's core purpose."  BAPCPA, as a much broader set of bankruptcy
reforms, had a different stated purpose.  *See id.*

   [12]  That the *Ransom* Court seemingly confused the means test's purpose
with BAPCPA's purpose is perhaps understandable given the case law.  Notably,
the Eleventh Circuit, in support of its conclusion that applicable commitment
period is a temporal requirement, quoted the following as "the legislative intent
behind the BAPCPA amendments:"

> The heart of [BAPCPA's] consumer bankruptcy
> reforms . . . is intended to ensure that debtors repay
> the maximum they can afford.

*Whaley v. Tennyson* (*In re Tennyson*), 611 F.3d 873, 879 (11th Cir. 2010) (omission in
original).  The text omitted from this quote, however, indicates the heart of
BAPCPA's reforms is the means test.  It is the means test, not BAPCPA's reforms,
that is "intended to ensure that debtors repay the maximum they can afford."
H.R. REP. NO. 109-31, pt. 1, at 2.

MEMORANDUM OF DECISION - 23

BAPCPA is interpreted to be consistent with the creditor-favoring means-test-purpose language, the system becomes less fair to debtors, and frustrates BAPCPA's general purpose.

Because both *Lanning* and *Ransom* addressed only means test issues, the Supreme Court's reliance upon the purpose of the means test was certainly appropriate in those decisions.  However, where the issue before a bankruptcy court relates to some other BAPCPA provision with a congressionally-stated purpose, the court must conduct its analysis with an eye toward that precise purpose, while also considering BAPCPA's general purpose of ensuring a fairer bankruptcy system for creditors and debtors alike.

    C.    <u>*Kagenveama*'s applicable commitment period holding is consistent with § 1325(b)(1)'s purpose.</u>

Within BAPCPA, Congress enacted § 1325(b)(1) "to specify that [a] court must find, in confirming a chapter 13 plan to which there has been an

MEMORANDUM OF DECISION - 24

objection, that the debtor's disposable income will be paid to unsecured creditors."  H.R. REP. NO. 109-31, pt. 1, at 52.  The text of § 1325(b)(1)(B) requires exactly that:  that all of a debtor's projected disposable income during the applicable commitment period be paid to unsecured creditors.

The appellate courts have split, however, regarding whether § 1325(b)(1)(B)'s language requires a plan of specific duration where debtors have no projected disposable income.  *Compare In re Kagenveama*, 541 F.3d 868, *with Carroll*, 634 F.3d 327 *and In re Tennyson*, 611 F.3d 873. Like the other Circuit decisions to address this issue, *Kagenveama* requires debtors with disposable income to pay such income to unsecured creditors, an outcome consistent with § 1325(b)(1)'s purpose.  541 F.3d at 875–76.  At the same time, the majority in *Kagenveama* noted that requiring a plan to remain open for a specific duration where there is no projected disposable income would do nothing to further § 1325(b)(1)'s stated purpose of verifying that debtors' "disposable income will be paid to unsecured

MEMORANDUM OF DECISION - 25

creditors" because, under the workings of the Code, those debtors have no

disposable income with which to make such payments.   541 F.3d at 876.   In

addition, while it can be argued that *Kagenveama*'s applicable commitment

period holding is undesirable for creditors, it is beneficial for above-

median-income debtors with no projected disposable income, and is,

therefore, seemingly consistent with BAPCPA's general purpose.

Projected disposable income calculations use means test standards

and formulas in determining the amount debtors can afford to repay their

creditors.  *See* §§ 707(b)(2); 1325(b)(2), (b)(3).  Those standards and formulas

were devised to better ensure that debtors repay their creditors.  *See* H.R.

REP. NO. 109-31, pt. 1, at 2.  However, such formulas

> are by their nature over- and under-inclusive.  In
> eliminating the pre-BAPCPA case-by-case
> adjudication of above-median-income debtors'
> expenses, on the ground that it leant itself to
> abuse, Congress chose to tolerate the occasional
> peculiarity that a bright-line test produces.

MEMORANDUM OF DECISION - 26

*Ransom*, 131 S.Ct. at 729.

As here, application of the National and Local standards occasionally yields a figure for the debtors' projected disposable income that is less than their Schedule I and J monthly net income.  In the Ninth Circuit, when calculations result in debtors with no projected disposable income, those debtors are not required to maintain their plan for any particular duration, despite potentially having Schedule I and J monthly net income.  *See*

*Kagenveama*, 541 F.3d at 877 (interpreting and applying §§ 1325(b)(1)(B) and (b)(4)).  This is because, as the Ninth Circuit explained,

> there is nothing in the Bankruptcy Code that requires a debtor with no "projected disposable income" to propose a five-year plan.  We must enforce the plain language of the Bankruptcy Code as written.  We may not make changes to the plain language of the Bankruptcy Code based on policy concerns because that is the job of Congress.

*Id.*

In the final analysis, it may seem peculiar that a debtor with  positive

MEMORANDUM OF DECISION - 27

monthly net income is not required to pay more to creditors. But, as stated

by the *Ransom* Court, Congress chose to accept peculiarities in adopting a

bright-line test to determining projected disposable income. *Kagenveama*'s

holding that an applicable commitment period does not apply to debtors

with no projected disposable income arguably makes the bankruptcy

system fairer to those debtors, and is consistent with BAPCPA's

congressionally-stated general purpose. If Congress did not intend the

results whereby an applicable commitment period does not apply to such

debtors, it is up to Congress, and not the courts, to change that result.

**IV.    Post-*Lanning* and -*Ransom* Decisions.**

An analysis of *Lanning* and *Ransom*'s impact on *Kagenveama*'s

applicable commitment period holding would be incomplete without

considering how the appellate courts have reacted to the *Lanning* and

*Ransom*. Notably, both the Sixth and Eleventh Circuits have weighed in on

the issue.

MEMORANDUM OF DECISION - 28

A.    _In re Tennyson_.

As urged by Trustee here, the Eleventh Circuit relied on _Lanning_ in

coming to a result at odds with _Kagenveama_.  _In re Tennyson_, 611 F.3d at

877–79.  _See also Timothy v. Anderson_ (_In re Timothy_), 442 B.R. 28, 35–36 (10th

Cir. BAP 2010) (quoting and adopting the Eleventh Circuit's _Tennyson_

analysis); _In re Wing_, 435 B.R. 705, 713–14 (Bankr. D. Colo. 2010) (same); _In

re Buck_, 443 B.R. 463, 467–68 (Bankr. N.D. Ga. 2010) (same).

Both _Tennyson_ and _Kagenveama_ involved above-median-income

debtors who, because their Form 22C calculations produced no "projected

disposable income," proposed three-year chapter 13 plans.  The Ninth and

Eleventh Circuits agree that "applicable commitment period" is a temporal

concept requiring payment to unsecured creditors over a specified period.

_In re Tennyson_, 611 F.3d at 877 (finding above-median-income debtors are

required to develop a plan with an applicable commitment period of at

least five years); _In re Kagenveama_, 541 F.3d at 875–77 (finding applicable

MEMORANDUM OF DECISION - 29

commitment period is not a mere monetary multiplier, but "denotes the time by which a debtor is obligated to pay unsecured creditors."). However, the Circuits disagree about whether the applicable commitment period's temporal requirement applies to debtors with no projected disposable income. *In re Tennyson* makes no distinction between positive and negative projected disposable income, and applies the requirement to all debtors. 611 F.3d at 877–79. *In re Kagenveama*, on the other hand, only applies the requirement to debtors with positive projected disposable income. 541 F.3d at 877.

In its decision, the Eleventh Circuit relied heavily upon *Lanning*. *In re Tennyson*, 611 F.3d at 878–79. Its *Lanning* analysis focused on the effect the forward-looking approach has on determining whether applicable commitment period is a temporal requirement. *Id.* Viewing § 1325(b)(1)(B)'s reference to applicable commitment period as nothing more than a projected disposable income mathematical multiplier,

MEMORANDUM OF DECISION - 30

*Tennyson* concluded that applicable commitment period must have a

meaning independent from § 1325(b)(1)(B), and therefore must be a

temporal term.  *Id.* ("If 'applicable commitment period' were left dependent

upon projected disposable income . . . then it would necessarily be

dependent on the multitude of indeterminate factors that *Lanning* has

allowed to be used in the determination of projected disposable income.").

In contrast, *Kagenveama* concluded that § 1325(b)(1)(B)'s reference to

applicable commitment period serves dual roles:  both as a mathematical

multiplier, and to specify the duration projected disposable income must be

paid to unsecured creditors.  541 F.3d at 875–76.  Because it attributed

multiple functions to § 1325(b)(1)(B)'s reference to applicable commitment

period, and did not view that reference solely as a mathematical multiplier,

*Lanning*'s adoption of the forward-looking approach has no impact on

*Kagenveama*'s applicable commitment period holding in general, let alone

its holding that applicable commitment period is inapplicable to debtors

MEMORANDUM OF DECISION - 31

without projected disposable income.

      B.     <u>*In re Carroll*</u>.

The Sixth Circuit also came to the opposite applicable commitment

period conclusion as *Kagenveama*, relying on "guideposts" in *Lanning* and

*Ransom* to do so.  *Carroll*, 634 F.3d at 351.  Like the Ninth and Eleventh

Circuits, the Sixth Circuit agrees applicable commitment period is a

temporal concept that, for objected-to plans, requires above-median-income

debtors with projected disposable income to pay their unsecured creditors

over a five year period.  *Id.* at 344.  Again, the difference between *Carroll*

and *Kagenveama* is whether that requirement applies to debtors with no

projected disposable income.  *Compare In re Kagenveama*, 541 F.3d at 877,

*with Carroll*, 634 F.3d at 356–57.

After analyzing the competing statutory interpretations of

"applicable commitment period" produced by *Kagenveama* and *Tennyson*,

and then undertaking its own statutory language analysis, *Carroll* indicates

MEMORANDUM OF DECISION - 32

"that the plain-language arguments supporting each approach are nearly in equipoise, and that the circuit-level decisions on the issue are entirely so." *See* 634 F.3d at 351. The Sixth Circuit then turned to what it referred to as "guideposts" extracted from *Lanning* and *Ransom*. *Id.*

From *Lanning*, *Carroll* focused on the Court's "senseless results" discussion. *Id.* at 352 (quoting *Lanning* language stating that, for debtors whose monthly net income increases during the six months prior to filing, bankruptcy courts should be allowed to adjust projected disposable income to account for such increases). At the same time, the *Carroll* decision points out "the Supreme Court made clear [in *Ransom*] that any analysis predicated on purported senseless results must be cabined by still another guidepost–BAPCPA's purpose of ensuring that debtors repay creditors using their full disposable income." 634 F.3d at 352–53 (citing *Ransom*'s "BAPCPA's core purpose" language).

As noted above, while the means test's purpose was to ensure that

MEMORANDUM OF DECISION - 33

debtors repay creditors using their full disposable income, BAPCPA's

purpose was to ensure a fairer bankruptcy system for both debtors and

creditors. *See* H.R. REP. NO. 109-31, pt. 1, at 2. Yet, *Carroll* focused on

finding an interpretation of "applicable commitment period" that is

consistent with the means test's purpose. 634 F.3d at 356 Because *Carroll*'s

"senseless results" analysis is based upon a comparison to the means test's

purpose, that analysis is obviously creditor-friendly. *Id.* ("We believe it is

now clear that . . . we must . . . apply the interpretation that has the best

chance of fulfilling BAPCPA's purpose of maximizing creditor

recoveries."). If, on the other hand, the same analysis were conducted with

an eye toward BAPCPA's general purpose of fairness to debtors and

creditors, it is impossible to say that the outcome in *Kagenveama* is any more

"senseless" than the *Carroll* decision's result.

## Conclusion

If it were writing on a clean slate, this Court might well be persuaded

MEMORANDUM OF DECISION - 34

to adopt Trustee's interpretation of chapter 13.[13]  Debtors with no projected

disposable income, but positive monthly net income, should, perhaps, be

expected to make a long-term commitment to paying their creditors, for no

other reason than to allow unsecured creditors or the trustee to move to

modify their plans if their circumstances improve.  *See* § 1329(a).  But the

---

[13]  Indeed, the logic and analysis in Judge Bea's dissent from the "applicable commitment period" portion of the Ninth Circuit's *Kagenveama* opinion seems quite compelling.  As he observes,

> "Although the purpose of Chapter 13 bankruptcy is to provide debtors a second chance, it is not a pardon of debt, or at least, a pardon right away.  Chapter 13 bankruptcy is a statutorily constructed second chance for debtors that, through the plan modification procedures in § 1329, also provides a second chance for creditors to be repaid by a bankruptcy debtor whose financial situation who has improved. . . . The applicable commitment period allows unsecured creditors who are otherwise not receiving payment from a debtor five years to monitor the debtor's finances and, in the event the debtor's disposable income increases during that time, file for plan modification under § 1329."

541 F.3d at 878-79.  Arguably, the majority in *Kagenveama* seems weigh the debtor's "second chance" rights under the Code more heavily than the creditors' rights.  Perhaps this approach to harmonizing the several purposes of the Code deserves further consideration if the issue returns to the court of appeals.

MEMORANDUM OF DECISION - 35

Ninth Circuit has already expressly addressed whether debtors with no

projected disposable income are required to confirm five-year plans in

*Kagenveama*.  And, while *Kagenveama* was overruled in part by *Lanning*,

neither *Lanning* nor *Ransom* alter *Kagenveama*'s applicable commitment

period holding.  Indeed, fairly analyzed, *Kagenveama* is consonant with the

particular purpose of § 1325(b)(1), and the general goals of BAPCPA as a

whole.

In summary, because this Court remains bound to follow *Kagenveama*

to the extent not impacted by the Supreme Court's decisions, Debtors in

this case need not propose plan payments to unsecured creditors for an

applicable commitment period of five years.  Trustee's objection to

confirmation of Debtor's proposed plan on this basis is denied.  Counsel for

Debtors and Trustee are directed to cooperate in the prompt submission of

an approved form of confirmation order for entry by the Court.

MEMORANDUM OF DECISION - 36

Dated:  April 18, 2011

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 37